UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROGER CULLEN,

                              Plaintiff,                               **REPORT AND**
                                                                                  **RECOMMENDATION**
       -against-                                          CV-07-3644 (CBA) (JMA)

CITY OF NEW YORK, MARTIN F. HORN,
Commissioner of the City of New York Department
of Correction, and VALERIE OLIVER, Bureau Chief
of the City of New York Department of Correction,

                              Defendants.
------------------------------------------------------------------X

A P P E A R A N C E S:

Damond J. Carter, Esq.
58 Beacon Avenue
Albany, New York 12203
     *Attorney for Plaintiff*

Jamie M. Zinaman, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street, Room 2-111
New York, New York 10007
     *Attorney for Defendants*

**AZRACK, United States Magistrate Judge:**

       Plaintiff Roger Cullen, a former correction officer employed by the City of New York

Department of Correction ("DOC"), commenced this action on August 29, 2007, pursuant to 42

U.S.C. § 1983 against defendants City of New York, Martin F. Horn, Commissioner of the DOC,

and Valerie Oliver, Bureau Chief of the DOC, ("defendants") alleging that defendants retaliated

against him for exercising his First Amendment right to free speech regarding a matter of public

concern.[1]  (Compl. ¶ 1.)  Plaintiff also brings state law claims against defendants for negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation of character.[2]  (Compl. ¶¶ 3-6.)

Plaintiff seeks compensatory and punitive damages, attorney's fees, and costs.  (Compl. 16.)  Presently before this Court is defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  By order dated March 17, 2008, defendants' motion was referred to me for a Report and Recommendation by the Honorable Carol B. Amon, United States District Judge.

For the reasons set forth below, I respectfully recommend that plaintiff's First Amendment retaliation claim be dismissed.  I further recommend that this Court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

## I. BACKGROUND

The following facts are taken from the pleadings in this action and the parties' submissions in connection with this motion.  The facts alleged in the complaint are assumed to be true for the purposes of the instant motion to dismiss.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  The Court recites only those facts necessary to resolve this motion.

Plaintiff Roger Cullen commenced a two-year probationary term of employment as a

---

[1] Plaintiff also alleged in his complaint that defendants violated his Equal Protection rights (Compl. ¶ 2), but subsequently withdrew the claim (Pl.'s Resp. to Defs.' Mot. to Dismiss 9 n.2, Jan. 2, 2008) (hereinafter, "Pl.'s Resp.").

[2] Plaintiff asserted an additional claim for reckless infliction of emotional distress in his complaint (Compl. ¶ 4), but subsequently withdrew the claim as duplicative (Pl.'s Resp. 9 n.2).

-2-

correction officer with the DOC on June 6, 2002. (Compl. ¶ 7.) Plaintiff was terminated from his position by Captain Wright on June 25, 2004. (Compl. ¶¶ 9-14.) Captain Wright cited plaintiff's tardiness and disciplinary record as the basis for plaintiff's termination. (Compl. ¶¶ 17-19.)

Plaintiff was late a total of ten times during his probationary term of employment. (Compl. ¶ 18.) Plaintiff's disciplinary record consists of an incident in which he failed to provide timely medical assistance to an injured inmate (Compl. ¶¶ 19-24), and a single instance of working overtime at the request of his supervisors but without obtaining prior authorization from the DOC (Compl. ¶¶ 25-28). During his tenure with the DOC, plaintiff made multiple allegations of misconduct and corruption on the part of DOC officers, supervisors and administrators. (Compl. ¶¶ 36-61.)

Plaintiff brought a Special Proceeding in Supreme Court, New York County pursuant to Article 78 of the New York Civil Practice Law and Rules challenging his termination and seeking reinstatement and back-pay, alleging that the DOC abused its discretion and acted in an "arbitrary and capricious" manner in terminating him. (Compl. ¶¶ 29-31.) The Supreme Court denied plaintiff's Article 78 petition, finding that plaintiff was a probationary employee who could be terminated at will as long as the reason for his termination did not violate a statute or the Constitution. (Compl. ¶¶ 34-35.)

On July 10, 2007, The Village Voice published an article entitled "What the Jail Guard Saw" discussing incidents of violence among and against inmates on Rikers Island. (See Decl. of J. Zinaman Ex. B (Graham Rayman, What the Jail Guard Saw, The Village Voice, July 3, 2007), Nov. 16, 2007 ("Zinaman Decl."); Compl. ¶ 6.) This article extensively quoted

deposition testimony given by plaintiff in a lawsuit involving a May 2003 inmate assault he witnessed while a correction officer at the Anna M. Kross Center ("AMKC") on Rikers Island, and delineated plaintiff's numerous attempts to report his fellow officers' misconduct to superiors at the DOC. (See generally Zinaman Decl. Ex. B.) According to the article, plaintiff first made written allegations of misconduct in September 2003, following the aforementioned inmate assault, and again in late May 2004, shortly before he was terminated. (Id.; see also Compl. ¶¶ 36-61.) Plaintiff alleged, both in the article and in his complaint, that some of his fellow officers used excessive force, refused medical care to injured inmates, falsified reports, and "deputized" inmates to assault other inmates at the officers' behest. (Zinaman Decl. Ex. B; Compl. ¶¶ 36-60.) Plaintiff also claimed that his allegations had not been properly investigated by "persons charged with investigating internal misconduct." (Compl. ¶ 61.)

The article in The Village Voice further disclosed that, in early May 2004, as plaintiff approached the end of his two-year probationary term of employment, five of his supervisors, including defendant Oliver, then the warden of AMKC, recommended plaintiff for permanent employment. (See Zinaman Decl. Ex. B.) The article went on to state that defendant Oliver later "reversed her decision and recommended [Cullen's] firing based on excessive tardiness" and that the "precise date that she reversed her decision is unknown. " (Id.)

Plaintiff claims that he initially believed that the reasons given for his termination were "unreasonable rather than a fabrication." (Compl. ¶¶ 62-63.) After reading the Village Voice article, however, plaintiff claims that he learned for the first time that he had been recommended for permanent employment by several supervisors, including defendant Oliver, and that defendant Oliver had subsequently changed her recommendation. (Pl.'s Resp. 14-17.) Plaintiff

alleges that, based on this new information, which he claims defendants deliberately concealed from him, his termination was not based on his tardiness or disciplinary record. (Compl. ¶ 67.) Rather, plaintiff claims that defendants retaliated against him for reporting his fellow correction officers' misconduct, thereby violating plaintiff's First Amendment right to free speech on a matter of public concern. (Compl. ¶¶ 67-69.)

Plaintiff also claims that defendant Horn defamed his character by falsely stating in the article that plaintiff's termination was based on his "excessive lateness." (Zinaman Decl. Ex. B; Compl. ¶¶ 6, 71.)

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In determining whether a complaint states a claim, the Court construes the complaint liberally, accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d at 56 (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), the factual allegations in plaintiff's complaint must be enough "to raise a right to relief above the speculative level[.]" Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 127 S. Ct at 1974.

**B.     First Amendment Retaliation Claim**

To state a section 1983 claim, a plaintiff must allege a violation of his constitutional or statutory rights by a person acting under color of state law.  See 42 U.S.C. § 1983; McCray v. N.Y. City Police Dep't, No. CV-99-7035 (CBA) (LB), 2008 U.S. Dist. LEXIS 5368, at *9 (E.D.N.Y. Jan. 24, 2008) (quoting Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004)). Therefore, to make out a retaliation claim and survive defendants' motion to dismiss, plaintiff must first show that he has an interest protected by the First Amendment.

The Supreme Court in Garcetti v. Ceballos, 547 U.S. 410 (2006), delineated a two-fold inquiry "to guide interpretation of the constitutional protections accorded to public employee speech." Id. at 418; see also Healy v. City of New York Dep't of Sanitation, No. 06-5865-CV, 2008 U.S. App. LEXIS 13734, at *2 (2d Cir. June 30, 2008) (citing Garcetti). The threshold inquiry is "whether the employee spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418.  If the employee did not speak as a citizen, then he or she "has no First Amendment cause of action based on his or her employer's reaction to the speech." Id.  If, however, the public employee spoke as a citizen, then the Court must inquire "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id.

The Supreme Court held in Garcetti v. Ceballos that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421 (holding disposition memorandum written by deputy district attorney recommending dismissal of case did not constitute protected speech

because memo written pursuant to his official duties, and hence, allegations of unconstitutional retaliation based on memo fail). The inquiry into the "scope of an employee's duties . . . is a practical one." Garcetti, 547 U.S. at 424. The Court went on to note that "[w]hen an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences . . . [but when] the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny." Id. at 423. Finally, the Garcetti Court noted that there are a number of safeguards available to public employees who seek to expose "governmental inefficiency and misconduct" including a "powerful network of legislative enactments – such as whistle-blower protection laws and labor codes[.]"[3] Id. at 425.

The required threshold inquiry in the instant case is a straightforward one – as a correction officer for the DOC, plaintiff was obligated to report misconduct among City employees. (Defs.' Reply Mem. of Law in Further Supp. of their Mot. to Dismiss 6-7, Mar. 7, 2008.) DOC Rule 3.20.170 states that "[m]embers of the Department shall report to the Commanding Officer any delinquency, dereliction of duty, violation of Rules and Regulations, or conduct prejudicial to good order, efficiency and discipline of the Department which the members observe, or of which the members have knowledge." (Id.) Plaintiff's letters to his supervisors detailing multiple instances of his fellow officers' misconduct were written pursuant to his employment obligations and are, therefore, analogous to the memorandum in Garcetti, and do not constitute protected speech under the First Amendment. See, e.g., Weintraub v. Bd. of

---

[3] See, e.g., New York Civil Service Law § 75-b, which prohibits public employers from taking any adverse employment action against an employee who discloses certain violations of law, rule or regulations.

Educ. of the City of New York, 489 F. Supp. 2d 209, 221 (E.D.N.Y. 2007) ("public employees who convey complaints or grievances about a matter pertaining to their official duties to their supervisors do so in their capacities as employees rather than citizens, even when the subject matter of their speech touches upon a matter of public concern, and . . . such speech is not protected by the First Amendment"); Miles v. Baruch College, No. CV-07-1214 (CPS) (RLM), 2008 U.S. Dist. LEXIS 5534, at *19-20 (E.D.N.Y. Jan. 25, 2008) (citing Garcetti).

Thus, as a correction officer, plaintiff had a duty to report his fellow officers' misconduct to his supervisors at the DOC. Consequently, plaintiff has failed to state a retaliation claim against defendants for violation of his First Amendment free speech rights, and I respectfully recommend that his claim be dismissed.

**C.     Monell Claim**

To the extent that plaintiff is attempting to assert a Monell claim against defendant City of New York (Pl.'s Resp. 30), that claim must fail. A Monell claim is only cognizable where there is an underlying constitutional violation. Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); see also Nasca v. County of Suffolk, No. 05-CV-1717 (JFB) (ETB), 2008 U.S. Dist. LEXIS 176, at *30 n.8 (E.D.N.Y. Jan. 2, 2008) (Monell claim cannot exist under § 1983 without a constitutional violation). Given that there was no constitutional violation in the instant case, as discussed supra, a Monell claim necessarily fails.

**D.    Remaining State Law Claims**

Plaintiff's remaining claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation of character are state law claims. The general rule is that, when federal claims are dismissed prior to trial, the state claims should also be dismissed. Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998); see also Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims") (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988)); Livant v. Clifton, No. 06-4707-CV, 2008 U.S. App. LEXIS 7377, at *9 (2d Cir. Apr. 7, 2008) ("based on its dismissal of the federal claims, the district court did not abuse its discretion in refusing to exercise jurisdiction over [plaintiff's] remaining state law claims").

Accordingly, I recommend that this Court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

### III.  CONCLUSION

For all of the foregoing reasons, I respectfully recommend that plaintiff's First Amendment retaliation claim be dismissed, and that this Court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

Any objections to this report and recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: Brooklyn, New York
July 8, 2008

/ s /
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE